IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

DORIS R.S. CURL, M.Ed.          *
15707 Bradford Drive
Laurel, Maryland 20707          *

      Plaintiff          *

   v.          *          Case No.: _CAUS-15612_

BELTSVILLE ADVENTIST SCHOOL  *
4230 Ammendale Road
Beltsville, Maryland 20705      *

    Serve: Wendy Pega, Principal   *
          4230 Ammendale Road
          Beltsville, MD 20705      *

   and          *

POTOMAC CONFERENCE CORP.       *
OF SEVENTH-DAY ADVENTISTS
606 Greenville Avenue           *
Staunton, Virginia 24401

                    *

    Serve: H. Robert Showers, Esq.
          201 International Circle   *
          Suite 250
          Hunt Valley, MD 21031      *
          Resident Agent
                    *

    Defendants          *

*   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT
## AND JURY DEMAND

    Plaintiff Doris R.S. Curl, M.Ed., by and through her undersigned counsel, hereby

sues Defendants Beltsville Adventist School and Potomac Conference Corporation of

Seventh-Day Adventists for the recovery of damages and other relief, as set forth below.



## PARTIES AND JURISDICTION

1.     Plaintiff Doris R.S. Curl, M.Ed., is a resident of the State of Maryland who currently resides at 15707 Bradford Drive in Laurel, Prince George's County, Maryland. She was formerly employed by Defendants as a music teacher.

2.     Defendant Beltsville Adventist School is located at 4230 Ammedale Road in Beltsville, Prince George's County, Maryland.  It is a school which educates students in kindergarten through eighth grade.

3.     Defendant Potomac Conference Corporation of Seventh-Day Adventists (hereinafter "Potomac Conference Corp."), a District of Columbia Corporation, has its principal office at 606 Greenville Avenue in Staunton, Virginia.  Defendant Potomac Conference Corp. conducts business throughout the State of Maryland, including at Beltsville Adventist School in Prince George's County, Maryland.

4.     At all times pertinent, Defendants employed in excess of 50 employees.

5.     This Court may exercise personal jurisdiction over Defendants pursuant to Md. Code Ann., Courts & Jud. Proc. § 6-102 and § 6-103.  Venue is appropriate under Md. Code Ann., Courts & Jud. Proc. § 6-201 and Md. Code Ann., State Gov't §§ 20-1013(b), 20-1202(c)(1). *See also* Prince George's County Code § 2-200.

6.     Plaintiff has fulfilled all conditions precedent under the Americans with Disabilities Act, as amended (hereinafter "ADA"), the Age Discrimination in Employment Act (hereinafter "ADEA"), the Maryland Fair Employment Practices Act (hereinafter "FEPA"), and the Prince George's County Code, and has otherwise exhausted her administrative remedies. On or about December 20, 2013, Plaintiff filed a

Charge of Discrimination with the EEOC alleging retaliation and discrimination on the basis of disability and age by Defendants. The Charge further noted that, in addition to Plaintiff's claims under the ADA and ADEA, she also had claims under the State of Maryland and Prince George's County analogs of said Acts. Plaintiff's Charge was automatically cross-filed with the Maryland Commission on Civil Rights and the Prince George's County Human Relations Commission pursuant to the work-sharing agreements between these agencies and the EEOC. A Notice of Suit Rights from the EEOC, which was issued at the request of Plaintiff, was then received by both Plaintiff and her undersigned counsel on February 23, 2015.[1] This Complaint is being filed within 90 days of Plaintiff's receipt of said Notice, and within two years of Defendants' discriminatory and retaliatory actions.[2]

## STATEMENT OF FACTS

7.    Plaintiff Doris R.S. Curl, M.Ed., worked as a full-time music teacher for more than 25 years at Defendant Beltsville Adventist School in Prince George's County, Maryland. The School is owned and operated by Defendant Potomac Conference Corp.

8.    On or about February 6, 2013, while working at the School, Plaintiff fell and sustained a serious physical and neurological injury constituting a disability. The disability has adversely impacted and substantially limited the operation of Plaintiff's brain, neurological system, and musculoskeletal system. The disability has also

---

[1] Based upon the two postmarks that appear on the envelope enclosing counsel's copy of the Notice, it was mailed by the EEOC on either February 18 or 20 of 2015.

[2] This two-year deadline is applicable to Counts VI, VII, VIII, XI, and XII below. *See* Md. Code Ann., State Gov't §§ 20-1013(a)(3), 20-1202(c)(1).

substantially limited other major life activities of Plaintiff, including but not limited to caring for herself, performing manual tasks, seeing, concentrating, and thinking.

9. Said disability resulted in the filing of a claim for workers' compensation benefits by Plaintiff in or about March of 2013.

10. Following her fall, Plaintiff received a course of medical treatment from neurologists and other physicians. A series of notes were issued by these physicians requiring Plaintiff's absence from work on account of her disability for set periods of time.

11. In late April of 2013, while still out on leave pursuant to her physicians' orders, Plaintiff was presented with and signed her annual contract with Defendants for the 2013-14 school year. The contract was then signed by a representative of Defednants, Keith L. Hallam, in May of 2013. Mr. Hallam served, and continues to serve, as the Vice-President for Education with Defendant Potomac Conference Corp. Pursuant to the contract, Plaintiff's "report to work date" was August 12, 2013.

12. On or about July 5, 2013, Plaintiff received a letter from Defendants' Human Resources Director at the time, Johanna Prestol-Dominguez, dated June 28, 2013. According to the postmark, the letter had been mailed on July 3, 2013. In the letter, Ms. Prestol-Dominguez referenced Plaintiff's signed contract and the return to work date of August 12, 2013, and stated that, if Plaintiff was unable to return to work by that date, her position would not be held open and other staffing arrangements would need to be made.

13. On August 7, 2013, Plaintiff was treated by her physician, Kevin E. Crutchfield, M.D., who is the Director of the Comprehensive Sports Concussion Program

at the Berman Brain and Spine Institute as well as the Director of the Noninvasive Vascular Laboratories in the Department of Neurology at Sinai Hospital in Baltimore. In a note dated August 8, 2013, Dr. Crutchfield authorized Plaintiff to return to work "with accommodations." Specifically, Plaintiff needed to be allowed a 15-20 minute rest break in a low-lit, quiet environment after every 2 to 3 hours of active work at the School.[3]

14.     On August 9, 2013, in an email entitled "returning to work," Plaintiff notified the School's principal, Wendy Pega, and Mr. Hallam that her doctor had allowed her "to return to work with minor accommodations which will not affect [her] performance as a teacher." Plaintiff further indicated that she would bring the doctor's note with her when she reported for work on August 12th. She signed off by saying "P.S.: I'm excited to go back to work!"

15.     On August 11, 2013, in a responsive email to Plaintiff, Ms. Prestol-Dominguez requested that Plaintiff not return to work until the situation with her accommodation request could be addressed.[4] Ms. Prestol-Dominguez further alleged that Plaintiff's contract had been "rescinded" the previous week at the direction of Defendant Potomac Conference Corp., which Plaintiff was not aware of.

16.     On August 14, 2013 at 9:07 a.m., without ever engaging in any sort of interactive process, Ms. Prestol-Dominguez bluntly told Plaintiff in an email that the

---

[3] Dr. Crutchfield's note also mentioned the potential need for Plaintiff to be relieved of her duties for part of a given day, but that was only in the eventuality that Plaintiff's symptoms became exacerbated in the work environment and did not subside with the rest break(s).

[4] Plaintiff did report to the School on August 12, 2013, and endeavored to discuss the situation with Ms. Pega and Ms. Prestol-Dominguez, but they promptly sent her home.

School had reviewed Dr. Crutchfield's note and "will not be able to accommodate the restrictions he has placed upon your work return." Ms. Prestol-Dominguez went on to say that "[a]ccommodation of the restrictions would not permit you to perform the basic core functions of the position as set forth in your employment agreement."

17.     This was not true.  Based upon Plaintiff's teaching schedule, there would have been sufficient gaps in time that would have readily allowed her to take the medically necessary rest breaks.  Nevertheless, Plaintiff found herself discriminated and retaliated against, unaccommodated, and unemployed because of her disability and in breach of the common law and her contract.

18.     Additionally, Defendants replaced Plaintiff with a new teacher who is approximately 26 years younger than Plaintiff.  This dynamic raises the specter of age being the cause of her termination.  Plaintiff was 56 years-old at the time her employment involuntarily came to an end.

19.     Plaintiff's wrongful, discriminatory, and retaliatory termination caused her both financial and emotional harm.  She lost wages and other benefits of her employment and suffered additional economic damages.  She also has suffered with mental and emotional anguish, loss of enjoyment of life, inconvenience, embarrassment, and other non-economic harms.  Moreover, Plaintiff takes the position that the stress and strain of her termination on her husband contributed to his death shortly thereafter at the age of only 59.

## CAUSES OF ACTION

### Count I – Breach of Contract

20.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

21.    The parties hereto formally executed a written contract in or about May of 2013[5] in which Defendants agreed, among other things, to pay Plaintiff wages in the amount of $69,549.36 for providing services to their School as a music teacher from August 12, 2013 through June 13, 2014.  Critically, August 12, 2013 was expressly identified in the contract as the "report to work date."

22.    Plaintiff entered this contract in good faith and fully intended to fulfill all of her obligations thereunder, including reporting to work on August 12, 2013.

23.    However, on or about August 11, 2013, Plaintiff was informed that Defendants had unilaterally, without Plaintiff's permission or consent, "rescinded" the parties' contract the previous week.  Thereafter, Defendants refused to allow Plaintiff to work at the School despite her willingness to do so.

24.    In so doing, Defendants breached the parties' contract by "rescinding" it without justification, and by failing and refusing to let Plaintiff work or receive payment of her wages during the contractual period or at any time thereafter.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for an amount in excess of $75,000 in damages, interest (both pre-

---

[5]  Plaintiff executed the contract on April 22, 2013, but Defendants' representative, Keith L. Hallam, did not sign until May.

and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count II – Anticipatory Breach of Contract

25.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

26.     The parties hereto formally executed a written contract in or about May of 2013[6] in which Defendants agreed, among other things, to pay Plaintiff wages in the amount of $69,549.36 for providing services to their School as a teacher from August 12, 2013 through June 13, 2014.  Critically, August 12, 2013 was expressly identified in the contract as the "report to work date."

27.     Plaintiff entered this contract in good faith and fully intended to fulfill all of her obligations thereunder, including reporting to work on August 12, 2013.

28.     However, on or about August 11, 2013, Plaintiff was informed that Defendants had unilaterally, without her permission or consent, "rescinded" the parties' contract the previous week.  Thereafter, Defendants refused to allow Plaintiff to work at the School despite her willingness to do so.

29.     In so doing, Defendants breached the parties' contract by anticipatorily "rescinding" it without justification, and by failing and refusing to let Plaintiff work or receive payment of her wages during the contractual period or at any time thereafter.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for an amount in excess of $75,000 in damages, interest (both pre-

---

[6] *See supra* Footnote 5.

and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count III – Wrongful Discharge

30.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

31.    As a result of suffering physical and neurological injuries at her workplace on or about February 6, 2013, Plaintiff filed a workers' compensation claim in or about March of 2013.  Plaintiff was out on leave on account of said injuries, as ordered by her doctors, through early August of 2013.

32.    Upon reporting in early August that she was ready to return to work with minor accommodations, as expressly ordered by one of her doctors, Plaintiff was terminated without any legitimate cause.  At the time of her termination, Plaintiff was still pursuing her workers' compensation claim.

33.    Defendants terminated Plaintiff in response to her filing of a workers' compensation claim.  In doing so, Defendants violated state law.  *See* Md. Code Ann., Labor & Employment § 9-1105(a) ("An employer may not discharge a covered employee from employment solely because the covered employee files a claim for compensation.").

34.    Defendants' termination of Plaintiff contravened a clear mandate of public policy, as express in § 9-1105 of the Labor & Employment Article of the Maryland Code.

35.    Defendants undertook the actions alleged herein with actual malice.

36.    As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not

limited to, lost wages and other benefits, mental and emotional anguish, pain and suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in an amount in excess of $75,000, plus an additional amount in excess of $75,000 in punitive damages, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, reasonable attorney's fees and costs of this action, and any further relief this Court or a jury deems appropriate.

## Count IV – Violation of the Americans with Disabilities Act, as Amended (Discrimination)

37.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each was set forth herein verbatim.

38.     Defendants were Plaintiff's "employer" within the meaning of the ADA. *See* 29 C.F.R. § 1630.2.

39.     Plaintiff's impairments constituted a disability, as that term is defined by the ADA.[7] At all times pertinent, Plaintiff disability has substantially limited her major life activities. *See id.* at § 1630.2(i).

40.     At all times pertinent, Plaintiff could perform the essential functions of her job, with or without an accommodation.

41.     The actions taken by Defendants while Plaintiff was in this condition, including but not limited to failing and refusing to engage in an interactive process,

---

[7] The definition of disability includes being actually impaired, having a record of such an impairment, or being regarded as having such an impairment. *See* 29 C.RF.R. § 1630.2(g).

failing and refusing to reasonably accommodate her, rescinding her employment contract, and terminating her, all constitute discrimination on the basis of Plaintiff's disability.

42.     Defendants' actions in this regard were also unlawful in that they were undertaken to harass and/or interfere with Plaintiff in the exercise or enjoyment of her rights under the ADA.

43.     Defendants' actions were committed with actual malice.

44.     As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages and other benefits, damages to her reputation, mental anguish, emotional pain, suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in excess of $75,000.00, plus punitive damages in excess of $75,000.00, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, benefits, attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count V – Violation of the Americans with Disabilities Act, as Amended
### (Retaliation)

45.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each was set forth herein verbatim.

46.     At all times pertinent, Plaintiff had a disability, as that term is defined by the ADA. *See* 29 C.F.R. § 1630.2. Plaintiff's disability has substantially limited her major life activities. *See id.* at § 1630.2(i).

11

47. Plaintiff engaged in the protected activity of taking a medical leave of absence for her disability and requesting medically necessary reasonable accommodations for her disability upon her return. The actions taken by Defendants in response thereto, including but not limited to refusing to engage in an interactive process, failing and refusing to reasonably accommodate her, rescinding her employment contract, and terminating her, were undertaken in retaliation for Plaintiff having taken said leave and sought said reasonable accommodations under the ADA.

48. Defendants' actions in this regard were committed with actual malice.

49. As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages and other benefits, damages to her reputation, mental anguish, emotional pain, suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in excess of $75,000.00, plus punitive damages in excess of $75,000.00, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, benefits, attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

### Count VI – Violation of the Maryland Fair Employment Practices Act (Discrimination)

50. Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19, as if each were set forth herein verbatim.

51.  Defendants were Plaintiff's "employer" within the meaning of Maryland's FEPA. *See* Md. Code Ann., State Gov't § 20-601(d)(1).

52.  Plaintiff's physical impairments constituted a disability, as that term is defined by Maryland law.[8]

53.  The actions taken by Defendants while Plaintiff was in this condition, including but not limited to refusing to engage in an interactive process, failing and refusing to reasonably accommodate her, rescinding her employment contract, and terminating her, all constitute discrimination on the basis of Plaintiff's disability. *See id.* at §§ 20-606(a)(1), 20-606(a)(4).

54.  Defendants' actions in this regard were also unlawful in that they were undertaken to harass and/or interfere with Plaintiff in the exercise or enjoyment of her rights under the FEPA.

55.  Defendants' actions were committed with actual malice.

56.  As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages and other benefits, damages to her reputation, mental anguish, emotional pain, suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in excess of 75,000.00, plus punitive damages in

---

[8]  The definition of "disability" includes, among other things, "a physical disability, infirmity, malformation, or disfigurement that is caused by bodily injury . . .; or . . . a mental impairment or deficiency; . . . a record of having a physical or mental impairment . . . ; or . . . being regarded as having a physical or mental impairment . . . ." "'Disability' includes: . . . any degree of . . . paralysis, amputation, or lack of physical coordination; . . . visual impairment . . . speech impediment; . . . and ... physical reliance on a . . . remedial appliance or device . . . ." *See* Md. Code Ann., State Gov't § 20-601(b).

13

excess of $75,000.00, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, benefits, attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count VII – Violation of the Maryland Fair Employment Practices Act (Retaliation)

57.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19, as if each were set forth herein verbatim.

58.     At all times pertinent, Plaintiff had a disability, as that term is defined by the FEPA. *See* Md. Code Ann., State Gov't § 20-601(b). *See also supra* Footnote 8.

59.     Plaintiff engaged in the protected activity of taking a medical leave of absence for her disability and requesting medically necessary reasonable accommodations for her disability upon her return. The actions taken by Defendants in response thereto, including but not limited to refusing to engage in an interactive process, failing and refusing to reasonably accommodate her, rescinding her employment contract, and terminating her, were undertaken in retaliation for Plaintiff having sought reasonable accommodations under the FEPA.

60.     Defendants' actions in this regard were committed with actual malice.

61.     As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages and other benefits, damages to her reputation, mental anguish, emotional pain, suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally for damages in excess of $75,000.00, plus punitive damages in excess of $75,000.00, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, benefits, attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count VIII – Violation of the Prince George's County Code §§ 2-185 et seq.
## (Disability Discrimination/Retaliation)

62.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19, as if each were set forth herein verbatim.

63.     As authorized under § 20-1202 of the State Government Article of the Annotated Code of Maryland, Plaintiff brings this action to seek damages and other relief for Defendants' violation of Prince George's County Code §§ 2-185 et seq. *See* Md. Code Ann., State Gov't § 20-1202(b). *See also* Prince George's County Code §§ 2-186, 2-200, and 2-222.

64.     Defendants were Plaintiff's "employer" within the meaning of the Prince George's County Code. *See* Prince George's County Code § 2-186(a)(5).

65.     Plaintiff's physical impairments constituted a disability, as that term is defined by the County Code.[9]   At all times pertinent, Plaintiff's disability has substantially limited her major life activities.

---

[9] In the County Code, "disability" is referred to as a "physical or mental handicap." Pursuant to the Code, "Physical or mental handicap shall mean an impairment which substantially limits one or more of such person's major life activities, or a record of having such an impairment, or being regarded as having such an impairment, which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impediment, or physical reliance on a . . . remedial appliance or device; and any mental impairment or deficiency . . . ." Prince George's County Code 2-186(a)(14.1).

66.   The actions taken by Defendants when Plaintiff was in this condition and after she had taken medically necessary leave and sought reasonable accommodations, including but not limited to their refusing to engage in an interactive process, failing and refusing to reasonably accommodate her, rescinding her employment contract, and terminating her, all constitute discrimination and retaliation on the basis of Plaintiff's disability. *See* Prince George's County Code §§ 2-186(a)(3), 2-222.

67.   Defendants' actions in this regard were also unlawful in that they were undertaken to harass and/or interfere with Plaintiff in the exercise or enjoyment of her rights under the County Code.

68.   Defendants' actions were committed with actual malice.

69.   As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages and other benefits, damages to her reputation, mental anguish, emotional pain, suffering, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in excess of 75,000.00, plus punitive damages in excess of $75,000.00, interest (both pre- and post-judgment), back pay, front pay in lieu of reinstatement, benefits, attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## Count IX – Violation of the Family and Medical Leave Act
### (Retaliation)

70.  Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each was set forth herein verbatim.

71.  At the time Plaintiff took leave in 2013, she was an "eligible employee" within the meaning of the FMLA.

72.  Within a 75-mile radius of Plaintiff's worksite, Defendants employed a total of 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year; Plaintiff was employed by Defendants for over 12 months prior to requiring FMLA leave; and Plaintiff had been employed for more than 1250 hours of service during that 12-month period.

73.  At the time Plaintiff went out on leave, she did so in order to care for a "serious health condition" within the meaning of the FMLA.

74.  In retaliation for having taken said leave, which was a protected activity under the FMLA, Plaintiff was mistreated and ultimately terminated by Defendants.

75.  In doing so, Defendants acted with knowing or reckless disregard for their legal obligations under the FMLA, and their actions were willful in nature.

76.  As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff lost her source of income.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in excess of $75,000.00, an additional amount in excess of $75,000.00 in liquidated damages, punitive damages in excess of $75,000.00,

back pay, front pay in lieu of reinstatement, benefits, pre- and post-judgment interest, attorney's fees, other costs of this action, and any other and further relief the Court or a jury deems appropriate.

## Count X – Violation of the Age Discrimination in Employment Act
## (Age Discrimination)

77.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

78.     Plaintiff was an "employee" and Defendants were his "employer" within the meaning of the ADEA.

79.     Section 623(a) of the ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). This protection is afforded to employees who are at least 40 years of age. *See id.* at § 631(a).

80.     Throughout her employment with Defendants, a period of over 25 years, Plaintiff consistently met or exceeded the legitimate expectations of her superiors.

81.     Nevertheless, in August of 2013, Defendant unjustifiably terminated Plaintiff in order to replace her with a much younger worker.

82.     Following Plaintiff's termination, her responsibilities as music teacher were delegated to a newly-hired woman who was approximately 26 years younger than Plaintiff. At the time of her termination, Plaintiff was 56 years old.

83. In taking these actions, Defendants acted with knowing or reckless indifference for their legal obligations under the ADEA, and their actions were malicious and willful in nature.

84. As a result of Defendants' unlawful actions, Plaintiff suffered significant economic and non-economic damages.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in an amount in excess of $75,000, plus an additional amount in excess of $75,000 in liquidated damages, an additional amount in excess of $75,000 in punitive damages, interest (both pre- and post-judgment), reasonable attorney's fees and costs of this action, and any further relief this Court or a jury deems appropriate.

### Count XI – Violation of Maryland's Fair Employment Practices Act
### (Age Discrimination)

85. Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

86. Plaintiff was an "employee" and Defendant were his "employer" within the meaning of the State of Maryland's FEPA. *See* Md. Code Ann., State Gov't § 20-601.

87. Under the FEPA, it is unlawful for an employer to "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's . . . age." *See id.* at § 20-606(a).

88.     Throughout her employment with Defendant, a period of over 25 years, Plaintiff consistently met or exceeded the legitimate expectations of her superiors.

89.     Nevertheless, in August of 2013, Defendants unjustifiably terminated Plaintiff in order to replace her with a much younger worker.

90.     Following Plaintiff's termination, her responsibilities as music teacher were delegated to a newly-hired woman who was approximately 26 years younger than Plaintiff. At the time of her termination, Plaintiff was 56 years old.

91.     In taking these actions, Defendants acted with knowing or reckless indifference for their legal obligations under the FEPA, and their actions were malicious and willful in nature. As such, in addition to compensatory damages, punitive damages are warranted.

92.     As a result of Defendants' unlawful actions, Plaintiff suffered significant financial losses as well as mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in an amount in excess of $75,000, plus an additional amount in excess of $75,000 in liquidated damages, an additional amount in excess of $75,000 in punitive damages, interest (both pre- and post-judgment), reasonable attorney's fees and costs of this action, and any further relief this Court or a jury deems appropriate.

**Count XII – Violation of the Prince George's County Code §§ 2-185 et seq.**
**(Age Discrimination)**

93.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 19 above, as if each were set forth herein verbatim.

94.     As authorized under § 20-1202 of the State Government Article of the Annotated Code of Maryland, Plaintiff brings this action to seek damages and other relief for Defendants' violation of Prince George's County Code §§ 2-185 et seq. *See* Md. Code Ann., State Gov't § 20-1202(b). *See also* Prince George's County Code §§ 2-186, 2-200, and 2-222.

95.     Defendants were Plaintiff's "employer" within the meaning of the Prince George's County Code. *See* Prince George's County Code § 2-186(a)(5).

96.     The Prince George's County Code defines discrimination, in pertinent part, as "acting, or failing to act, or unduly delaying any action regarding any person because of . . . age (except as requires by State or federal law) . . . in such a way that such person is adversely affected in the area[] of employment," and further states that "[n]o employer in the County shall discharge . . . any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify, or assign employees because of discrimination." *Id.* at §§ 2-186(a)(3), 2-222.

97.     Throughout her employment with Defendants, a period of over 25 years, Plaintiff consistently met or exceeded the legitimate expectations of her superiors.

98.     Nevertheless, in August of 2013, Defendants unjustifiably terminated Plaintiff in order to replace her with a much younger worker.

99. Following Plaintiff's termination, her responsibilities as music teacher were delegated to a newly-hired woman who was approximately 26 years younger than Plaintiff. At the time of her termination, Plaintiff was 56 years old.

100. In taking these actions, Defendants acted with knowing or reckless indifference for their legal obligations under the Prince George's County Code, and their actions were malicious and willful in nature. As such, in addition to compensatory damages, punitive damages are warranted.

101. As a result of Defendants' unlawful actions, Plaintiff suffered significant financial losses as well as mental anguish, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for damages in an amount in excess of $75,000, plus an additional amount in excess of $75,000 in liquidated damages, an additional amount in excess of $75,000 in punitive damages, interest (both pre- and post-judgment), reasonable attorney's fees and costs of this action, and any further relief this Court or a jury deems appropriate.

Respectfully submitted,

Neil R. Lebowitz
Lebowitz Law Firm
10440 Little Patuxent Pkwy., Suite 590
Columbia, Maryland 21044
410-730-9010
Counsel for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Neil R. Lebowitz
Lebowitz Law Firm
10440 Little Patuxent Parkway, Suite 590
Columbia, Maryland 21044
410-730-9010
Counsel for Plaintiff

2005 MAY 15 PM 8: 03

Clerk of the Circuit Court

189# CV HD 4991

23